UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

CIVIL ACTION NO. 13-11-DLB

OUTDOOR VENTURE CORPORATION                                    PLAINTIFF

vs.                        MEMORANDUM ORDER AND OPINION

RONALD MARK ASSOCIATES, INC.                                   DEFENDANT

*** *** *** ***

Plaintiff Outdoor Venture Corporation ("OVC") commenced this action against Defendant Ronald Mark Associates, Inc. ("RMA"), alleging Kentucky state-law claims of breaches of express and implied warranties, fraudulent misrepresentation, and negligent misrepresentation arising from RMA's purported failure to provide OVC with fabric that met specifications outlined in its purchase orders.  (Doc. # 1-3).  The Court's jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.

This matter is currently before the Court on Defendant RMA's Motion To Dismiss Or, In The Alternative, To Transfer Venue. (Doc. # 3).  This motion is fully briefed and ripe for review. (*See* Docs. # 9 & 10).  For the following reasons, Defendant's motion is **denied**.

## I.  STANDARD OF REVIEW

The plaintiff bears the burden of establishing through specific facts that personal jurisdiction exists over a non-resident defendant.  *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012).  Where, as here, the defendant has moved to dismiss the case under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and the Court is

ruling on the motion without first holding an evidentiary hearing, the plaintiff need only make a prima facie case for jurisdiction. *Id.* Under such procedural posture, the Court does "not weigh the facts disputed by the parties but instead consider[s] the pleadings in the light most favorable to the plaintiff . . . ." *Id.* The Court must also consider the affidavits in a light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996). The Court may also consider the defendant's undisputed factual assertions. *Conn*, 667 F.3d at 711.

Under these circumstances, the "burden of the plaintiff is relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). Thus, the Court "need only find that [the] plaintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006). The Court now turns to the facts in the pleadings and affidavits under this standard of review.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Plaintiff's Complaint (Doc. # 1-3); the Affidavit of J.C. Egnew, President of OVC (Doc. # 9-1); and, where the defendant's factual assertions are undisputed, the Declarations of Charles J. Riotto, Senior Vice President of RMA (Doc. # 3-2) and Kristen L. Repyneck, counsel for RMA (Doc. # 10-1).

Plaintiff OVC is a Kentucky corporation with its principal place of business in Kentucky. (Doc. # 1-3 ¶ 1). Defendant RMA is a New Jersey corporation alleged by OVC to be "doing business in Kentucky." (*Id.* at ¶ 2). RMA sold and delivered 44,000 yards of 68 inch 442171C TAN/BLACK fabric (the "fabric") to OVC between October 2009 and January 2011 for $226,600. (*Id.* at ¶¶ 3-4). OVC purchased the Fabric for the purpose of

2

manufacturing tent components for sale to Hunter Defense Technologies ("HDT").  (*Id.* at ¶ 4).  HDT integrated OVC's components into the Tent, Extendable, Modular, Personnel tent system ("TEMPER"), and the TEMPER was then sold to the United States government.  (*Id.*).

In 2003, RMA sales representative Tom DelVecchio visited OVC's headquarters in Stearns, Kentucky.  (Doc. # 9-1 ¶ 3).  DelVecchio had developed a relationship with OVC during his previous employment; he therefore visited RMA to discuss potential business between OVC and RMA.  (Doc.  # 3-2 ¶¶ 6, 9).  RMA was "eager to become an OVC supplier," but, prior to this visit, OVC had not seriously considered using RMA as a supplier of components for its products.  (Doc. # 9-1 ¶ 3).  At the meeting, DelVecchio presented OVC with price quotes for RMA products.  (*Id.*).

OVC and RMA then commenced an eight-year business relationship, during which time RMA provided numerous samples to OVC for testing in hopes of enticing OVC to order additional RMA products.  (*Id.* at ¶ 4).  OVC issued all purchase orders from Kentucky to RMA in New Jersey.  (Doc. # 3-2 ¶ 21).  All of RMA's production, manufacture, quality control testing, and services obligated under the OVC purchase orders were then rendered solely in New Jersey.  (*Id.* at ¶¶ 23-26).  RMA's products were shipped free on board ("FOB") in New Jersey where OVC had its own contract carrier pick up the goods.  (*Id.* at ¶ 27).  RMA did not have control over where OVC shipped the products it manufactured.  (*Id.* at ¶ 28).  RMA does not have any office, warehouse, real property, employee, or agent in Kentucky.  (*Id.* at ¶ 4).  RMA is not authorized to do business in Kentucky and does not conduct any advertising in Kentucky.  (*Id.*).

RMA's sales force was aware that Outdoor used a specialty fabric in its military TEMPER tent components that it was not initially capable of producing.  (*Id.* at ¶ 12). Hoping to procure additional business from OVC, RMA began developing the speciality fabric in accordance with specification provided by OVC.  (*Id.* at ¶¶ 13-14).  During the development of the fabric, Mr. DelVecchio communicated with OVC on average four times per month primarily by telephone and email regarding the fabric.  (*Id.* at ¶ 15). He also occasionally had in-person communications regarding the fabric with OVC at industry trade shows and military specification meetings outside of Kentucky from 2003 to 2009.  (*Id.* at ¶ 16).  RMA completed development of the fabric in 2009 and OVC began ordering the fabric from RMA to be incorporated into the TEMPER tents for HDT.  (*Id.* at ¶ 17; Doc. # 9-1 ¶ 5).

RMA employees visited OVC facilities in Kentucky on several occasions during the business relationship, increasing in frequency as more problems were discovered with the Fabric.[1]  (Doc. # 9-1 ¶ 7).  On November 8, 2009, Mr. DelVecchio visited OVC in Kentucky to review quality defects per OVC's request.  (*Id.*).  In May 2010, Mr. DelVecchio and an RMA employee visited OVC in Kentucky to review quality issues.  (*Id.*).  OVC also continually contacted RMA about quality issues from Kentucky and often received specific information from RMA in Kentucky.  (*Id.* at ¶ 10).

---

[1]   RMA disputes that the visits to Kentucky were all in response to problems with the RMA fabric.  RMA states that Mr. DelVecchio and a member of RMA's development team traveled to Kentucky once in 2009 to discuss quality issues and corrective actions with a different product, as well as to discuss volume increases in the Fabric bought by RMA. (Doc. # 3-2 ¶ 29).  RMA also states that another visit was to observe a trial run of the Fabric because RMA was implementing a new system to improve the Fabric's appearance. (*Id.* at ¶ 30). Finally, RMA states that visits in 2010 and 2011 by DelVecchio and other RMA employees were to address quality issues and obtain corrective actions for defects in products other than the Fabric. (*Id.* at ¶ 31).

From May to August of 2012, HDT stopped all orders from OVC because the TEMPER tent was suffering a high number of failures in the field, which were linked to problems with the fabric.  This caused OVC to lose most of its trained operators working on the HDT tent production and resulted in a replacement cost of at least $1,700,000.  (*Id.* at ¶¶ 8-9, 11).

Plaintiff OVC filed its Complaint in McCreary Circuit Court on December 3, 2012. (Doc. # 1-3).  On January 14, 2013, Defendant RMA removed the action to federal court on the basis of diversity jurisdiction.  (Doc. # 1).  Defendant RMA then filed the instant Motion To Dismiss Or, In The Alternative, To Transfer Venue on January 22, 2013.  (Doc. # 3).

### III.  ANALYSIS

#### A.    Motion to Dismiss for Lack of Personal Jurisdiction

In this diversity action, the court "must look to the law of the forum state to determine the reach of the district court's jurisdiction over the parties, subject to the constitutional due process requirements."  *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).  This requires a two-step analysis: first, the Court must determine whether Kentucky's long-arm statute authorizes the exercise of jurisdiction over RMA; and, if so, the Court must determine whether the exercise of that jurisdiction comports with constitutional due process.  *Id.*

#### 1.    Kentucky's Long-Arm Statute

Under Kentucky's long-arm statute, "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from a person's . . . [c]ontracting to supply services or goods in this Commonwealth."   K.R.S.  §

454.210(2)(a)(2).  The Kentucky Supreme Court has broadly interpreted the statute, finding that the contract need not be made or executed in Kentucky.  *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011).  Instead, the contract need only "provide for the supplying of services or goods to be transported into, consumed or used in Kentucky."  *Id.* (emphasis added).

The Kentucky Supreme Court's analysis of the long-arm statute in *Hinners v. Robey* is instructive.  In that case, the defendant, situated in Missouri, advertised a vehicle for sale on eBay, which contained misrepresentations about the condition of the vehicle.  *Id.*  The plaintiff, in Kentucky, submitted a winning bid, and then traveled out of state to take possession of the vehicle.  *Id.*  The defendant executed vehicle transfer documents in Missouri to enable the plaintiff to obtain a Kentucky registration and title for the vehicle.  *Id.*  The plaintiff then brought the vehicle back to Kentucky covered by the defendant's warranty.  *Id.*

The Kentucky Supreme Court held that the defendant's conduct in *Hinners* constituted "contracting to supply services or goods in the Commonwealth" as set forth in KRS § 454.210(2)(a)(2).  Although the contract was executed out-of-state, and possession of the vehicle was transferred out-of-state, the Kentucky Supreme Court held that "it was anticipated by the parties from the outset that the vehicle would be transported to and used in Kentucky."  *Id.*  The parties' anticipation, coupled with the fact that the vehicle was brought back to Kentucky in accordance with that anticipation, satisfied the statutory predicate of KRS § 454.210(2)(a)(2) authorizing *in personam* jurisdiction.  *Id.*

OVC's transaction with RMA is similar to the transaction in *Hinners*.  Here, RMA, through its agent, came to Kentucky to solicit OVC's business.  RMA was interested in

6

producing a speciality fabric for OVC to use in developing tent components, which OVC manufactured in one of its Kentucky production facilities.  Similar to the transaction in *Hinners*, OVC placed several orders for the fabric from Kentucky to New Jersey.  Also like *Hinners*, OVC, through an agent, took possession of the fabric out-of-state, in New Jersey.  Most of the fabric returned to Kentucky, as RMA admits, consistent with the parties' anticipation that it would be used in OVC's Kentucky production facilities.  As the Kentucky Supreme Court found in *Hinners*, RMA's conduct constitutes "contracting to supply services or goods in the Commonwealth" pursuant to KRS § 454.210(2)(a)(2).  "Subjecting [RMA] to adjudication in Kentucky is therefore authorized by the statute *if* the claim asserted against [it] is one "arising from" [its] contract to supply services of goods in this state."  *Id.*

To determine whether a claim has "aris[en] from" the specific statutory predicate, "there must exist 'a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction.'"  *Id.* (quoting *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 58 (Ky. 2011)).  In *Hinners*, the Kentucky Supreme Court found that the plaintiff's fraudulent misrepresentation and breach of warranty claims "were based upon the very same contract 'to supply[ ] goods' upon which the long-arm jurisdiction under the statute is predicated."  *Id.*  In fact, the Court held it was "self evident" from the complaint that the claims "[arose] from" the contract to supply goods in Kentucky.  *Id.*  The same can be said about OVC's claims here.  Its claims for breach of warranty, fraudulent misrepresentation and negligent misrepresentation are directly related to RMA's failure to provide fabric in accordance with their agreement and, thus, "[arose] from" the contract to supply goods in Kentucky.  Therefore, this transaction meets the requirements for long-arm jurisdiction under KRS § 454.210(2)(a)(2).

## 2.    Federal Due Process

Once the Court finds that the long-arm statute extends to the defendant, the Court must determine whether the exercise of personal jurisdiction offends federal due process. *Air Prods. & Controls, Inc.*, 503 F.3d at 550.  The due process requirement is satisfied if the plaintiff can establish either general or specific jurisdiction.  *Miler v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012).  "General jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant."  *Id.*  "Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state."  *Id.*  OVC has only argued in favor of specific jurisdiction.  Whether the Court's exercise of personal jurisdiction over RMA offends federal due process will be analyzed accordingly.

The Sixth Circuit has articulated a three-part test that courts must use in determining whether exercising specific *in personam* jurisdiction comports with due process:

> First, the defendant must purposefully avail [itself] of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable.

*Id.* at 680 (quoting *S. Macho. Co. v. Mohasco Indus. Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).   Each of these requirements must be met for the court to invoke personal jurisdiction.  *Id.*

**(a)   RMA purposefully availed itself of the privilege of acting or causing a consequence in Kentucky.**

The first prong of *Mohasco* – purposeful availment – is often described as the "sine qua non for *in personam* jurisdiction."  *Air Prods. & Controls, Inc.*, 503 F.3d at 551.  To satisfy this prong, the plaintiff must demonstrate that the defendant "purposefully availed [itself] of 'the privilege of acting in the forum state or causing a consequence in the forum state.'"  *Id.* (quoting *Mohasco*, 401 F.2d at 381).  An out-of-state defendant is said to have "purposefully availed" itself of the forum state if it has deliberately engaged in significant activities in the forum state or has created continuing obligations between itself and residents within the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

Applying these principles to this case, OVC has established that RMA has purposefully availed itself of Kentucky.   As the Supreme Court held in *Burger King*, when a defendant reaches out beyond one state and creates continuing relationships and obligations with residents of the forum state, it  is subject to regulation and sanctions in the forum state for the consequence of its activities.  *Id.* at 473.  That is exactly what RMA did here.  In 2003, Mr. DelVecchio, an agent of RMA, visited OVC's headquarters in Kentucky for the purpose of fostering a business relationship between OVC and RMA, a business proposition that was not solicited by OVC.  Throughout the eight-year business relationship that followed, RMA provided numerous samples to entice OVC to order additional products, sold a vinyl-coated fabric to OVC, and even developed fabric specifically for use by OVC in Kentucky.  Once the specialty fabric began to fail, Mr. DelVecchio and two other RMA employees made multiple visits to OVC headquarters in Kentucky to review quality issues

9

related to the fabric.  Together, these facts demonstrate that RMA consciously sought to create a business relationship with OVC knowing that OVC was a Kentucky resident, and then continued to actively solicit business from OVC by developing the speciality fabric specifically for use by OVC in Kentucky.  Because RMA "consciously reached out" to OVC's Kentucky home and benefitted from the business relationship with OVC, RMA purposefully availed itself of the privilege of acting in Kentucky. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1266-67 (6th Cir. 1996) (finding purposeful availment because the defendant "consciously reached out" to the plaintiff's "Ohio home").

This conclusion finds support in prior cases from the Sixth Circuit.  In *Air Products and Controls, Inc. v. Safetech International, Inc.*, the Sixth Circuit found that an out-of-state defendant purposefully availed itself of the privilege of acting in Michigan by entering a nine-year business relationship in which the defendant purchased hundreds of thousands of dollars worth of goods from the Michigan company.  503 F.3d at 551. Similarly here, RMA engaged in an at least an eight-year business relationship with OVC involving numerous transactions, which has generated over $4,600,000.00 in revenue since 2009 alone, which included $226,600.00 for the fabric at issue.  *See also Chrysler Corp. v. Uptown-Hartford, Inc.*, 173 F.3d 854 (6th Cir. 1999) (table) (holding that out-of-state defendant purposefully availed itself of Michigan law when it reached out to a Michigan corporation in a series of negotiations and then maintained a seven-year affiliation).

This Court has also found that an out-of-state defendant purposefully availed itself of Kentucky law in a factually similar case.  In *Tri-State Equipment Rentals, LLC v. Chevalier*, No. 05-210-DLB, 2007 WL 2571672, at *4 (E.D. Ky. Aug. 31, 2007), this Court held that a Wisconsin company purposefully availed itself of the benefits of transacting

business in Kentucky when it "solicited business from [the plaintiff], known by [the defendant] to be a Kentucky corporation, which included the sending of emails and the placing of phone calls."  In reaching this conclusion, the Court cited to the Sixth Circuit's decision in *In-Flight Devices v. Van Dusen Air, Inc.*, 466 F.2d 220 (6th Cir. 1972), *overruled on other grounds by Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998), finding that the out-of-state seller entered a "substantial contract," totaling $900,000.00, with the Kentucky buyer, which, by itself, was a sufficient basis for establishing purposeful availment.

Here, RMA's solicitation of OVC's business has even stronger ties to Kentucky.  Not only did RMA and OVC exchange emails and phone calls, but RMA *initiated* the business relationship by sending one of its agents to Kentucky to solicit OVC's business.  Over time, RMA sent fabric samples to Kentucky, developed fabric to be used specifically by OVC in Kentucky, and then sent its employees to Kentucky when the specialty fabric began to have problems.  While it appears the parties entered multiple sales agreement, RMA has derived well over $4.6 million from those sales.  Just as the Court found in *Tri-State Equipment Rentals, LLC*, these facts are sufficient to establish purposeful availment.

Despite the overwhelming evidence that RMA "reached out beyond one state and create[d] continuing relationships and obligations" in Kentucky, *see Burger King*, 471 U.S. at 473, RMA argues that it did not purposefully avail itself of Kentucky because it has no physical presence in Kentucky.  As RMA notes, its principal place of business is in New Jersey; it designs and manufactures fabric exclusively in New Jersey; it has never maintained a physical presence in Kentucky; none of its employees are stationed in Kentucky; and its employees have only traveled to Kentucky on four occasions over the course of ten years.  However, this argument is unconvincing because "physical presence

in a forum state is not required, and the Supreme Court has 'consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Air Prods. & Controls, Inc.*, 503 F.3d at 551.

RMA also relies on the Sixth Circuit's decision in *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), in arguing that it did not purposefully avail itself of Kentucky because it would have conducted business with OVC regardless of its location in Kentucky. In *Calphalon*, the defendant entered an agreement with Calphalon to be its exclusive products representative in Minnesota, Iowa, North Dakota, Sought Dakota, and Nebraska. *Id.* at 720.  During the term of the agreement, the defendant communicated with Calphalon in Ohio via telephone, fax and mail, and made two visits to Ohio.  *Id.*  At the end of the term, Calphalon notified the defendant that it did not intend to renew the agreement.  *Id.* The defendant's attorney notified Calphalon that it was in breach of the agreement.  *Id.* at 721. In response, Calphalon filed a complaint in Federal District Court in the Northern District of Ohio seeking, *inter alia*, a declaratory judgment that it lawfully terminated the defendant.  *Id.*

The Sixth Circuit held that the district court properly dismissed the complaint because it did not have personal jurisdiction over the defendant.  *Id.*  at 724.  The court found that the defendant's contacts with Ohio were "fortuitous" and "attenuated."  *Id.* at 722.  According to the court, the defendant agreed to represent Calphalon in many states, but not Ohio, and there was nothing about the agreement to suggest that the defendant was attempting to exploit the market for cooking in Ohio.  *Id.* at 723.  Although the defendant communicated with Calphalon in Ohio and made physical visits there, the court held that those encounters occurred "solely because Calphalon chose to be headquartered in Ohio,

12

not because [the defendant] sought to further its business and create 'continuous and substantial' consequences there." *Id.*

RMA's reliance on *Calphalon*, however, is misplaced because it is clearly distinguishable from the present case. In *Calphalon*, the out-of-state defendant agreed to provide the plaintiff with services in many states, but not the forum state. As the Sixth Circuit held, "[the defendant] would have served as Calphalon's representative in the designated states, regardless of Calphalon's base of operations." *Id.* Here, in contrast, RMA agreed to provide OVC with speciality fabric that was to be used in OVC's Kentucky production facilities to create other products. The Court has no reason to doubt RMA's assertion that it would have provided OVC with fabric regardless of OVC's operation in Kentucky. However, the fact remains that RMA specifically developed and provided a fabric to OVC, knowing OVC would use in its Kentucky production facilities to create TEMPER tent components. This is neither a "fortuitous" or "attenuated" contact with Kentucky.

RMA's final contention is that it did not purposefully avail itself of Kentucky because it delivered the fabric to OVC in New Jersey, as demonstrated by their agreement that RMA would ship the fabric F.O.B. Hillside, New Jersey. RMA relies on Judge Heyburn's decision in *Papa John's Int'l, Inc. v. Entm't Mktg. & Commc'ns Int'l, LTD*, 381 F. Supp. 2d 638 (W.D. Ky. 2005) to support this argument. In that case, Papa John's contracted with the defendant to secure desirable licensing agreements with film studios in California and New York. *Id.* at 640. Dissatisfied with the services rendered by the defendant, Papa John's filed a declaratory judgment action in the Western District of Kentucky against the defendant. *Id.* The Court held that it did not have personal jurisdiction over the defendant,

13

in part, because the negotiation and performance occurred outside of Kentucky, the defendants never entered Kentucky, and there were no products delivered to Kentucky. *Id.*  As RMA cites, the *Papa John's* Court also held that it could not exercise personal jurisdiction because:

> [w]hatever agreement was reached, was not reached in Kentucky.  Nor did any goods provided by Defendants pass title in Kentucky.  Nor is it clear that Kentucky law would govern the substantive issues . . . The facts here do not present the case of a corporation reaching out to create an on-going series of relationships with a Kentucky customer involving numerous billings, shipment of product to or from the state and substantial sums of money.

*Id.* at 643-43 (internal citations omitted).

*Papa John's International, Inc*, however, does not compel the conclusion that this Court may not exercise *in personam* jurisdiction over RMA.  Although RMA block quoted a large portion of the court's holding in its memorandum, it omitted a significant portion of the holding that is immediately relevant to the case at hand.  The *Papa John's* Court also held:

> There was virtually no evidence that Defendants solicited business in Kentucky or that they actually performed work in Kentucky.  Plaintiffs produced no evidence that Defendants derived substantial revenues from business in Kentucky.

*Id.* at 643.   Here, in contrast, RMA did solicit business in Kentucky and also derived substantial revenues from Kentucky.  RMA also developed an on-going relationship with a Kentucky customer with the intent of providing fabric to be used at OVC's Kentucky production facilities.  These facts compel the conclusion that RMA did purposefully avail itself of the privilege of acting in Kentucky.

Additionally, the fact that the goods were delivered to OVC in New Jersey does not negate the finding of *in personam* jurisdiction.   Defendant RMA stresses that RMA's

products were shipped F.O.B. Hillside, New Jersey, and that RMA had no control over where OVC shipped the products after OVC's contract carrier received the goods in New Jersey.  A F.O.B. term is one factor the court can consider in determining whether the defendant has minimum contacts with the forum state.  *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471 n.10 (5th Cir. 2006). However, the exercise of personal jurisdiction does not depend on the technicalities of when title passes, but instead depends on whether other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper.  *Id.* at 471-72.  Here, RMA engaged OVC in an eight-year business relationship for the manufacture and sale of multiple products, including the speciality fabric. OVC issued all its purchase orders from Kentucky, and RMA knew that OVC manufactured its TEMPER tent components using the fabric at its headquarters in Kentucky.

It is also disingenuous for RMA to suggest that it did not purposefully avail itself of the privilege of operating in Kentucky simply because it delivered the fabric F.O.B. Hillside, New Jersey, and had no control over where the fabric went thereafter.  The entire purpose of the business relationship was for RMA to supply fabric to OVC, which OVC would then use at its Kentucky production facilities to produce tent components.  While title and possession might have passed outside of Kentucky, RMA was certainly aware, and intended, for the fabric to be used in Kentucky.  In the end, RMA purposefully "reach[ed] out beyond [New Jersey] and create[d] continuing relationships and obligations" with OVC in Kentucky, such that it has purposefully availed itself of this forum state.  *See Burger King*, 471 U.S. at 473.

15

> **(b)     The causes of action arise from RMA's activities in Kentucky**

"The 'arising from' requirement . . . is satisfied when the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon Corp.*, 228 F.3d at 723.   The Sixth Circuit has "articulated the standard for this prong in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of' of the defendant's contacts, or whether the causes of action are 'related to' or 'connected with' the defendant's contacts with the forum state." *Air Prods. & Controls, Inc.*, 503 F.3d at 553 (citing *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988); *Youn v. Track, Inc.,* 324 F.3d 409, 419 (6th Cir. 2003)).   This has been described by the Sixth Circuit as a "lenient standard" which does not require the cause of action to "formally" arise from the defendant's contacts.   *Id.* (citing *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)).

Here, OVC has asserted, *inter alia*, five claims for breach of an express or implied warranty against RMA.   "When the cause of action is for breach of a contract entered into by the defendant with a forum state resident, the second prong of the *Mohasco* test is easily met."   *Kelly v. Int'l Capital Res., Inc.*, 231 F.R.D. 502, 512 (M.D. Tenn. 2005) (citing *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("if the cause of action is for breach of contract, as it is here, then the cause of action naturally arises from the defendant's activities in [the forum state].") ; *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 229 (6th Cir. 1972) ("Defendant's transaction of business in [the forum state] – its entering a contractual relationship with a [forum state] corporation – is necessarily the very soil from which the action for breach grew.")).   Thus, with respect to the five breach of

16

warranty claims, the second *Mohasco* factor is satisfied.

Although RMA acknowledges it entered an eight-year contractual relationship with a Kentucky corporation, it argues that the causes of action do not arise out of its contact with Kentucky because the alleged breach occurred in New Jersey, if at all. However, the Sixth Circuit has explicitly rejected this argument, holding that district courts should not focus on "which party's actions caused an alleged breach of the contract," but instead must "look to where the operative facts of the controversy arose." *Calphalon Corp.*, 228 F.3d at 724. The operative facts of the controversy are related to the defendant's contact with this Commonwealth because RMA pursued the contract with OVC in Kentucky, developed the fabric specifically for use by OVC in Kentucky, and the fabric then used in Kentucky allegedly resulted in the causes of action.

District courts have also routinely rejected RMA's argument in factually similar cases. For example, in *Meco Corp. v. MRMC, Inc.*, the defendant contracted to supply machinery to the plaintiff, which was to be used to upgrade the plaintiff's facility in Tennessee. *Meco Corp.*, 2:04-cv-431, 2005 WL 2387727, at *1 (E.D. Tenn. Sept. 28, 2005). Like the case at issue, the machinery was to be manufactured out-of-state and delivered to the plaintiff out-of-state. *Id.* Because the facts supporting the breach occurred outside of Tennessee, the defendant argued the breach of contract action did not arise in Tennessee. *Id.* The district court, however, rejected this argument and found that the causes of action naturally arose from the defendant's activities in Tennessee. *Id.*

*Functional Pathways of Tennessee, LLC v. Wilson Senior Care, Inc.*, another factually similar case, is also instructive. The court stated:

> WSC avers that the subject matter of the contract completely related to work performed or potentially performed in the State of South Carolina.  However, *it is not necessary for the activities giving rise to the breach of contract to actually have occurred in the forum state.  LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1303 (6th Cir. 1989).  The Court finds that under the lenient "arising from" or "related to" standard, the operative facts of this action arise form WSC's contacts with the forum state, namely its negotiation and execution of two contracts with a Tennessee corporation, its performance under the two contracts, and its use at its Couth Carolina facilities of therapists trained and employed by a Tennessee corporation.  In addition, the consequences to Plaintiff's business operations of WSC's alleged breach of contract have a substantial connection to the forum state.  Accordingly, the second prong of the *[Mohasco]* test is satisfied in this case.

*Functional Pathways of Tenn., LLC v. Wilson Senior Care, Inc.*, 866 F. Supp. 2d 918, 927 (E.D. Tenn. 2012) (emphasis added).

Like *Meco Corp.* and *Functional Pathways of Tennessee, LLC*, the actions of RMA that constitute the alleged breach did not occur in the forum state.  However, as *Functional Pathways of Tennessee, LLC* held, "it is not necessary for the activities giving rise to the breach of contract to actually have occurred in the forum state."  *Functional Pathways of Tennessee, LLC*, 866 F. Supp. 2d at 927.  RMA entered into multiple contracts with a Kentucky corporation, performed under those contracts, and knew that the fabric it was creating specifically for OVC was to be used by OVC at its Kentucky production facility.  According to the complaint, the faulty fabric also caused significant consequences in Kentucky, to include approximately $1,700,000.00 in replacement costs.  For all of these reasons, the breach of warranty claims arise out of RMA's negotiation and performance of the contract it entered with a Kentucky corporation, and thus the second prong of the *Mohasco* test is satisfied.

**(c)     The exercise of jurisdiction over RMA is reasonable.**

The final prong of the *Mohasco* test requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Mohasco*, 401 F.2d at 381.  This "decision must depend upon a determination of whether [the forum state] has an interest in resolving the conflict at issue."  *Id.* at 384. Once the first two prongs of the *Mohasco* test have been answered affirmatively, "resolution of the third involves merely ferreting out the unusual cases where that interest cannot be found."  *Id.*

The determination of the reasonableness of the exercise of jurisdiction will depend on many factors, including the burden on the defendant, the interests of the forum state, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering fundamental substantive social policies. *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Ca.*, 480 U.S. 102, 113 (1987).

The exercise of personal jurisdiction over RMA is reasonable.  This case centers on a breach of contract dispute and does not present any unusual circumstance that would negate Kentucky's interest in adjudicating the claims.  *Mohasco*, 401 F.2d at 381. Although RMA will be burdened by litigating in Kentucky, RMA's eight-year relationship with OVC and RMA's decision to actively solicit business from OVC indicate that it was reasonably foreseeable for RMA to be haled into a Kentucky court.   *See Krauss-Maffei Corp. v. Donovan*, No. 07-99-DLB, 2008 WL 108757, at *7 (E.D. Ky. Jan. 9, 2008) ("Given the parties' five-year relationship and the choice-of-law provision in the contract, [d]efendant could reasonably foresee being haled into a Kentucky court. Furthermore, [d]efendant's

contacts with [Kentucky] . . . represent actions by the defendant" that were purposefully directed toward Kentucky.).  Further, Kentucky's interest in resolving a suit brought by its resident OVC is strong because of the effect of contractual breaches on its corporate residents such as OVC and on the state's economy as a whole.  *See Tri-State Equipment Rentals*, *LLC*, 2007 WL 2571672, at *5.

Defendant RMA argues that all five factors weigh against exercise of personal jurisdiction.  First, RMA argues that, as a small corporate entity, RMA would suffer a substantial burden to litigate in Kentucky.  RMA further argues that nearly all of the witnesses, materials, and documents are not in Kentucky and there is a proper forum in New Jersey.  Also, RMA cites *Hillerich & Bradsby v. Danny Hall*, 147 F. Supp. 2d 672 (W.D. Ky. 2001), for the proposition that Kentucky courts have exhibited little interest in adjudicating contract disputes for services negotiated and performed out of state.  Finally, RMA notes that the broad social policy of reasonableness is not served because the equities weigh heavily in defendant's favor.  However, where the first two prongs of the *Mohasco* test have been answered affirmatively, this prong "involves merely ferreting out the unusual cases" where the state does not have an interest in resolving the conflict at issue. *Mohasco*, 401 F.2d at 381.  As discussed above, Kentucky has a strong interest in adjudicating breach of contract disputes and the case does not present any unusual circumstance to negate Kentucky's interest.

### B.    Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, [the Court] may transfer any civil action to any other district or division where it might have been

brought." 28 U.S.C. § 1404(a). The analysis of a Section 1404(a) motion is a two-step inquiry: first, the Court must determine whether the action might have been brought in the other venue; second, the Court must consider whether a change of venue will facilitate the convenience of the parties and witnesses and serve the interests of justice. *D.C. Micro Dev., Inc. v. Lange*, 246 F. Supp. 2d 705, 712-13 (W.D. Ky. 2003). In determining whether to transfer venue, the Court must consider the following factors:

1.   the convenience of the parties;

2.   the convenience of the witnesses;

3.   the relative ease of access to sources of proof;

4.   the availability of process to compel attendance of unwilling witnesses;

5.   the cost of obtaining willing witnesses;

6.   the practical problems associated with trying the case most expeditiously and inexpensively; and

7.   the interest of justice.

*Id.* at 713. A defendant must present "strong evidence that a change of venue is appropriate" and, "unless the balance of convenience is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Rutherford v. Goodyear Tire & Rubber Co.*, 943 F. Supp. 789, 791 (W.D. Ky. 1996).

Further, where actions involving nearly identical parties and issues have been filed in two different district courts, the Court should apply the well-established doctrine of the first-to-file rule, which states that "the court in which the first suit was filed should generally proceed to judgment." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assoc., Inc.*, 16 F.

App'x 433, 437 (6th. Cir. 2001).  This rule encourages comity among federal courts of equal rank, but may be ignored where factors weigh against enforcement of the rule, including extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping.  *Id.*  For purposes of determining chronology, "the date that an original complaint is filed controls."  *Id.*  Where one of the cases was removed from state court, other courts have determined that "the date of filing in state court [is] the relevant benchmark."  *See, e.g., Igloo Products Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tx. 1990) ("This conclusion seems inescapable, as a district court takes the case as it finds it when it is removed from state court.").

Applying these standards, this case shall not be transferred pursuant to 28 U.S.C. § 1404(a).  The action might have been brought in New Jersey, as OVC concedes.  However, under the second step of the inquiry, RMA has not presented strong evidence that a change of venue to New Jersey will facilitate the convenience of the parties and witnesses and serve the interests of justice.  Defendant RMA argues that the factors weigh heavily in favor of transfer to the District of New Jersey because litigating in Kentucky would be a hardship for RMA as a small organization with no office or agent in Kentucky; the records of production and testing are located in New Jersey; and the interests of justice are served by transferring to New Jersey because all of the alleged breaches occurred in New Jersey.  RMA stresses that the convenience of nonparty witnesses is the most important factor and that, because all of the non-party witnesses reside and work outside of Kentucky but are closer in terms of travel time to New Jersey, the burden on the non-party witnesses to travel to Kentucky for litigation is higher than it would be to litigate in New Jersey.  *See, e.g., Moses v. Bus. Card Express*, 929 F.2d 1131, 1137 (6th Cir. 1991) (stressing the

22

importance of the convenience of potential witnesses given the explicit wording of 28 U.S.C. § 1404(a)).

RMA will be inconvenienced by litigating in Kentucky, but no more than OVC would be inconvenienced by litigating in New Jersey.  The non-party witnesses will likewise be inconvenienced by the litigation in either forum.  The majority of the witnesses will be from outside of both Kentucky and New Jersey.  However, the witnesses will mostly be from Ohio and Virginia, two states that border Kentucky.  Because of the geographical proximity of the four main states involved, litigating in New Jersey does not facilitate the convenience of the witnesses in a more substantial manner than Kentucky. Finally, the interest of justice is served by litigating in Kentucky because no public interest concerns are implicated by the Court's decision not to transfer.  *See, e.g., Moses*, 929 F.2D at 1137 ("[A] district court should consider . . . public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'").

Most importantly, the Court finds that, under the first-to-file rule, the Court should proceed with the action filed in Kentucky. The actions filed in both Kentucky and New Jersey involve the contractual dispute between OVC and RMA. OVC originally filed its complaint in state court in Kentucky on December 3, 2012.[3] RMA filed its suit in the District of New Jersey on December 10, 2012.  RMA then removed OVC's suit to the Eastern District of Kentucky on January 14, 2013.  Under the first-to-file rule, the date that the original complaint is filed controls and, where the original complaint was filed in state court

---

[3]  RMA claims in its Notice of Removal that OVC filed its state court action on December 10, 2012. (Doc # 1 ¶ 1).  OVC claims in its Response to Defendant's Motion to Dismiss that it filed its action on December 4, 2012. (Doc. # 9 at 1).  However, OVC signed its Complaint on December 3, 2012. (Doc. # 1-3 at 10). Regardless of whether the Complaint was filed in Kentucky state court on December 3, 2012 or December 4, 2012, this action was filed before RMA filed its Complaint in New Jersey on December 10, 2012.

and then removed to federal court, the Court should refer to the date the complaint was filed in state court. *See Zide Sport Shop of Ohio*, 16 F. App'x. at 437; *Igloo Products Corp.*, 735 F. Supp. at 217 . Therefore, OVC's action was filed on December 3, 2012, seven days before RMA's action was filed in New Jersey. Further, there are no indications that RMA's action was filed under extraordinary circumstances or was a result of inequitable conduct or bad faith on OVC's part. *See Zide Sport Shop of Ohio*, 16 F. App'x. at 437. Applying the first-to-file rule, this Court should therefore proceed to judgment.

## IV.  CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** that Defendant Ronald Mark Associates, Inc.'s Motion to Dismiss or, in the alternative, to Transfer Venue (Doe. # 3) is hereby **DENIED**.

This 15th day of May, 2013.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\London\13-11 MOO denying mtn to dismiss for lack of personal jurisdiction.wpd